IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Christopher Michael Bauer, | |
| Plaintiff, | Case No.: 1:2025-CV-_____ |
| vs. | |
| City of Williston, Tyler Hronek, Jason Jonas, | **CIVIL COMPLAINT** |
| Luke Olson, Michael Wilson, David Peterson, | |
| Michelle Romans, Heather Goebel, Jane Doe, | |
| Taylor Dawn Olson, Thomas Michael Simon | |
| Defendants. | |

## I.  PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiff Christopher Michael Bauer's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. The plaintiff alleges that on March 31, 2024, he was unlawfully detained, arrested, and subjected to excessive force by officers of the Williston Police Department without reasonable suspicion or probable cause, in violation of his Fourth Amendment rights.

3. Plaintiff further alleges that city and county officials engaged in a pattern of retaliatory conduct and malicious prosecution, including the fabrication of charges, false sworn testimony, and the continued pursuit of criminal proceedings despite a judicial finding that the initial seizure was unconstitutional.

4.  In addition, Plaintiff's rights to privacy, due process, and free speech were violated when Defendants, acting under color of law, released unredacted body camera footage of his arrest—including sensitive and humiliating content—to a private individual with known intent to harass and publicly defame Plaintiff.

5.  That individual, acting in concert with public officials, then publicly disseminated false and defamatory statements, contacted Plaintiff's employer and client, and interfered with Plaintiff's livelihood and reputation.

6.  Plaintiff brings this action for compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees under 42 U.S.C. § 1983. The named Defendants—both individual actors and municipal entities—violated Plaintiff's constitutional rights through unlawful seizure, excessive force, malicious prosecution, retaliatory acts, and deliberate indifference to misconduct. Additionally, the City of Williston and Williams County are liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for maintaining customs, policies, or practices—including failure to train, supervise, investigate, and discipline employees—that directly caused and perpetuated these constitutional violations.

## II.   PARTIES

7. **Plaintiff:** Christopher Michael Bauer, 6244 Eastwood Court, Anchorage, AK 99504; Phone: (907) 764-1270; Email: apricitygroup@gmail.com. Plaintiff is currently a resident of Anchorage, Alaska, but was a resident of Williston, North Dakota, at all times relevant to this action. As a result of ongoing public defamation, social media harassment, and threats to Plaintiff's safety and livelihood, Plaintiff was compelled to relocate out of state, incurring substantial moving and resettlement expenses.

8. **Defendant No. 1:** *City of Williston*, 22 East Broadway, Williston, ND 58802, Williams County; Phone: (701) 577-8100. Police Commissioner James Bervig, Email: jamesb@ci.williston.nd.us. sued in his official capacity. The City is a municipal corporation liable under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), for its customs, policies, or practices, and for failure to adequately train and supervise officers.

9. **Defendant No. 2:** *Tyler Hronek*, Williston Police Department Patrol Officer, 223 E Broadway #201, Williston, ND 58801, Williams County; Phone: (701) 577-1212; Email: hronek@ci.williston.nd.us. Sued in his individual capacity for unconstitutional acts committed under the color of state law.

10. **Defendant No. 3:** *Jason Jonas*, Williston Police Department Patrol Sergeant, 223 E Broadway #201, Williston, ND 58801, Williams County; Phone: (701) 577-1212; Email: jonas@ci.williston.nd.us. Sued in his individual capacity for unconstitutional acts committed under the color of state law.

11. **Defendant No. 4:** *Luke Olson*, Williston Police Department Patrol Sergeant, 223 E Broadway #201, Williston, ND 58801, Williams County; Phone: (701) 577-1212; Email:

olsonl@ci.williston.nd.us. Sued in his individual capacity for failure to intervene and for contributing to Plaintiff's unconstitutional arrest.

12. **Defendant No. 5:** *Michael Wilson*, Williston Police Department Professional Standards Lieutenant, 223 E Broadway #201, Williston, ND 58801, Williams County; Phone: (701) 577-1212; Email: wilson@ci.williston.nd.us. Sued in his official capacity for failure to supervise and as a policymaker under *Monell*.

13. **Defendant No. 6:** *David Peterson*, Williston Police Department Chief of Police, 223 E Broadway #201, Williston, ND 58801, Williams County; Email: peterson@ci.williston.nd.us. Sued in his official capacity for failure to supervise and implement policies to prevent officer misconduct.

14. **Defendant No. 7:** *Michelle Romans*, Center Manager, Williams County Dispatch Center, 3429 4th Avenue W, Williston, ND 58801, Williams County; Email: communications@co.williams.nd.us. Sued in her official capacity for failure to supervise dispatch operations and maintain appropriate screening procedures.

15. **Defendant No. 8:** *Heather Goebel*, Dispatcher, Williams County Dispatch Center, 3429 4th Avenue W, Williston, ND 58801, Williams County; Email: communications@co.williams.nd.us. Sued in her individual capacity for relaying unverified and uncorroborated 911 information that led to Plaintiff's unlawful seizure.

16. **Defendant No. 9:** *Jane Doe*, 911 Caller, 3429 4th Avenue W, Williston, ND 58801, Williams County; Email: communications@co.williams.nd.us. Sued in her individual capacity for knowingly making a false report and contributing to the violation of Plaintiff's rights. Identity to be disclosed in discovery by Williams County Dispatch Center.

17. **Defendant No. 10:** *Taylor Dawn Olson*, City Prosecutor, 107 Main St., P.O. Box 417

Williston, ND 58802; Email: taylor@furusethlaw.com. Sued in her individual capacity for engaging in malicious prosecution, retaliation, and abuse of process under color of law. Olson is not entitled to prosecutorial immunity for actions taken outside the scope of advocacy, including decisions to pursue unsupported charges following a judicial finding of unconstitutional conduct, misrepresentation of evidence, and retaliatory legal action.

18. **Defendant No. 11**: *Thomas Michael Simon*, Facebooker, 3203 Long Branch Ave Williston, ND 58801, Email: thomassimon124@gmail.com. At all relevant times, operated under the alias "Williston Trending Topics News Radio," an unlicensed media outlet. Sued in his individual capacity under both 42 U.S.C. § 1983 and North Dakota state law. The plaintiff alleges that Simon knowingly and maliciously disseminated unredacted police body camera footage received directly from the Williston Police Department. This footage included sensitive, humiliating, and constitutionally protected material. Simon acted either in concert with or at the direction of city officials, and in doing so, violated Plaintiff's constitutional privacy rights and committed defamation, false light, and intentional infliction of emotional distress.

### III.    JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983, which provides a civil cause of action for the deprivation of constitutional rights under color of state law.

20. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (a)(4), which provide jurisdiction for actions to redress the deprivation of rights secured by the Constitution and laws of the United States, and to recover damages or equitable relief under any Act of Congress providing for the protection of civil rights.

21. Plaintiff brings claims for violations of the Fourth and Fourteenth Amendments, including but not limited to unlawful seizure, arrest without probable cause, excessive force, malicious prosecution, retaliatory conduct, and municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

22. Venue is proper in the United States District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because all Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, specifically in Williams County, North Dakota.

23. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

## IV.    FACTUAL ALLEGATIONS

**Initial Incident and Unlawful Arrest**

24. On March 31, 2024, Plaintiff Christopher Michael Bauer was lawfully present in the parking lot of Hardee's restaurants located at 1020 2nd Avenue West in Williston, North Dakota. He was resting inside a marked company vehicle after completing an overnight payroll shift in his capacity as Transportation Manager for Harlow's School Bus Services.

25. At approximately 10:08 a.m., an anonymous 911 caller contacted the Williams County Dispatch Center and reported a male "slumped over" in a vehicle. The caller explicitly stated that she had not approached the vehicle, had not visually or physically confirmed any emergency, and refused to provide identifying information. Despite these material deficiencies, Dispatcher Heather Goebel treated the call as a verified medical emergency, relayed it to law enforcement without further vetting, and failed to assess its credibility.

26. Officer Tanner Hronek of the Williston Police Department arrived on the scene with emergency lights activated and initiated a traffic stop as the Plaintiff was exiting the parking lot. Upon contact, Plaintiff was alert, coherent, and showed no signs of distress or impairment. Nevertheless, Officer Hronek escalated the encounter, questioned Plaintiff about his work hours, ordered him out of the vehicle without probable cause, and detained him without legal justification.

27. Officers Hronek and Jason Jonas engaged in demeaning and coercive behavior. Officer Hronek told Plaintiff, "If you don't like it here, you can leave Williston," and falsely claimed that Plaintiff was "statistically overdosed" or "under the influence." These statements were unsupported by objective evidence and were intended to intimidate Plaintiff. According to 2024 WPD data, the statistical likelihood of impairment in similar

contexts was less than 1.8%. Plaintiff later tested negative for alcohol and drugs via both jail-administered and independent testing.

28. Officer Jonas escalated the situation by attempting to place Plaintiff into a second patrol car, without any medical, safety, or legal justification. The plaintiff was not advised of his Miranda rights. Throughout the encounter, he remained calm and cooperative and repeatedly requested a supervisory officer.

29.  While being escorted between patrol vehicles, Plaintiff, visibly anxious and attempting to demonstrate that he posed no threat, began emptying his pockets to show he was unarmed. During this movement, Plaintiff's pajama pants unintentionally and momentarily slipped down, briefly exposing part of his buttocks. The exposure was clearly accidental and non-criminal in nature. Nonetheless, Officer Jonas—acting on the advice of Sgt. Luke Olson—arbitrarily charged Plaintiff with Disorderly Conduct. Both officers were aware that the facts did not satisfy the legal elements required for a charge of Indecent Exposure under North Dakota law, yet proceeded to initiate criminal proceedings regardless.

30. During the arrest, Officers Hronek and Jonas applied excessive and unnecessary force, physically restraining Plaintiff in a manner that injured his left shoulder. No de-escalation techniques were used, and Plaintiff's injury has resulted in lasting pain and limited mobility.

31. At no time did Plaintiff pose a threat to officers, the public, or himself. The force used was objectively unreasonable, excessive, and violated clearly established rights under the Fourth and Fourteenth Amendments.

32. Upon arrival, Sgt. Olson was informed by Plaintiff that the exposure was accidental. The Plaintiff requested that Olson review the situation. Instead of intervening, Olson allowed the arrest to proceed and supported the filing of charges he knew to be unfounded.

**Detention and Medical Testing**

33. While detained at the Williams County Correctional Center, Plaintiff requested a drug test to confirm his sobriety. Jail staff initially refused, believing Plaintiff was under arrest for a drug offense. When they said no such charge existed, staff stated they could not administer a test absent such charges. A breathalyzer was conducted, returning a negative result. Subsequent independent drug testing confirmed Plaintiff was not impaired.

**Release of Unredacted Body Camera Footage and Retaliation**

34. Following Plaintiff's arrest, the Williston Police Department released unredacted body-worn camera footage of the incident to Thomas Michael Simon, a convicted felon and operator of the unlicensed media platform known as "Williston Trending Topics News Radio." At the time, Simon was not registered as a licensed business in the State of North Dakota, in violation of applicable business registration requirements. The footage included sensitive material—namely accidental nudity and private emotional distress—and was subsequently disseminated to the public.

35. The release of this unredacted footage served no legitimate public interest. The video was provided to a known provocateur and published on social media for the purpose of publicly humiliating Plaintiff, resulting in severe reputational damage, emotional trauma, and harm to Plaintiff's employment and professional standing.

36. In the following months, Simon repeatedly republished and distorted the footage, creating and sharing selectively edited clips across social media platforms, including his Facebook

page with a following of over 18,000 users. This ongoing campaign of defamation and character assassination was made possible through the Williston Police Department's initial unauthorized release of sensitive materials.

37. On or about April 11, 2024, Plaintiff and Simon engaged in a private in-person meeting, which was recorded by both parties. The meeting was conducted in good faith, and Plaintiff did not consent to its public release. Although Simon initially proposed releasing a livestream or video discussion, the content was never publicly published by mutual agreement. However, Simon later maliciously mischaracterized the content of this conversation and publicly disclosed admissions or statements taken out of context in a manner calculated to defame Plaintiff and harm his professional and personal reputation.

38. Without Plaintiff's consent, Simon disclosed and distorted details of this private conversation to Plaintiff's employer, Harlow's School Bus Services, and to Williston Basin School District #7, one of Plaintiff's key clients. Simon admitted to these disclosures and did so with intent to damage Plaintiff's background, disrupt his employment, and cast doubt on his character and credibility.

39. Simon additionally made knowingly false statements to third parties and the public, including the false and defamatory claims that Plaintiff was a convicted felon and a domestic violence offender. These claims were broadcast to Simon's online audience, further spreading harmful misinformation.

40. In reality, Plaintiff has no felony or domestic violence convictions and has successfully passed all employment-related background checks with both Harlow's School Bus Services and Williston Basin School District #7. Simon's defamatory statements were

demonstrably false, malicious, and designed to interfere with Plaintiff's business and reputation.

41. Simon escalated his conduct by contacting both Harlow's and the school district, demanding interviews and formal responses to his fabricated allegations. To amplify his retaliatory campaign, Simon also submitted a false and inflammatory report to the Williston Police Department—logged under CFS #2024019244—in which he claimed Plaintiff had "violent tendencies." The WPD's Command Log for April 11, 2024, confirms that Simon requested a police officer be present at the meeting with Plaintiff, stating Plaintiff "has violent tendencies" and falsely framing Plaintiff as a threat.

42. These actions were taken with malicious intent to retaliate against Plaintiff for asserting his civil and constitutional rights, including his complaints against local law enforcement and public officials. Simon's conduct directly interfered with Plaintiff's employment and contractual relationships, violated Plaintiff's right to privacy, and inflicted significant emotional, reputational, and economic harm.

**Internal Complaints and Supervisory Inaction**

43. On April 4, 2024, Plaintiff filed a formal misconduct complaint with the Williston Police Department against Officers Hronek, Jonas, and Olson. The complaint cited unlawful seizure, excessive force, retaliation, and collusion with media. It was submitted to Lt. Michael Wilson and Chief David Peterson.

44. On April 18, 2024, Lt. Wilson, co-signed by Chief Peterson, dismissed Plaintiff's complaint without conducting a meaningful investigation. Their response falsely claimed that Plaintiff had violated both Indecent Exposure and Disorderly Conduct statutes, though

Plaintiff had only been charged with Disorderly Conduct latter and was later fully acquitted.

45. The plaintiff asserts that Lt. Wilson and Chief Peterson failed to respond to substantiated reports of misconduct, enabling a retaliatory prosecution and shielding officers from accountability. Their inaction caused further harm to Plaintiff's rights and reputation.

**Judicial Findings and Continued Prosecution**

46. On January 14, 2025, during the evidentiary hearing on Plaintiff's Motion to Suppress and Dismiss, Officer Tanner Hronek took the stand and provided false and materially inconsistent testimony under oath. Officer Hronek had previously documented that Plaintiff's vehicle was blocked in when officers arrived. However, during the hearing, Hronek denied this fact under oath, contradicting both the body camera footage and his own prior statements in official police reports.

47. At the same hearing, Officer Hronek also falsely testified that Plaintiff was exhibiting signs of impairment, despite contemporaneous records—both in the police report and from the Williams County Correctional Center—clearly stating that no indicators of impairment were observed, and that Plaintiff was coherent, calm, and responsive at the time of contact.

48. During the same hearing, Sergeant Jason Jonas admitted under oath that a DUI investigation was initiated as a pretext for the traffic stop, despite the absence of any reasonable suspicion or objective indicators of impairment. This admission confirmed that the stop was not based on any lawfully articulable grounds and was conducted in violation of Plaintiff's Fourth Amendment rights.

49. On February 12, 2025, Judge Kirsten M. Sjue issued an order finding that Plaintiff's initial stop and seizure were unconstitutional and unsupported by reasonable suspicion or probable cause, in violation of the Fourth Amendment.

50. On February 28, 2025, during Plaintiff's criminal trial, Officer Hronek again committed perjury by repeating the false claim that Plaintiff exhibited signs of impairment. This assertion directly contradicted Hronek's own original police report, jail documentation, and the outcome of a breathalyzer test which confirmed no presence of alcohol, as well as subsequent drug screening that returned negative for any substances.

51. Despite this ruling, the City of Williston continued its prosecution. On February 28, 2025, a jury returned a verdict of Not Guilty, and a formal Judgment of Acquittal was entered on March 3, 2025.

**Prosecutorial Misconduct by Taylor Olson**

52. City Prosecutor Taylor Olson knowingly continued to pursue criminal charges against Plaintiff despite clear judicial findings of constitutional violations and lack of probable cause. Her conduct was retaliatory and malicious.

53. Olson ignored exculpatory evidence, misstated legal standards in court filings, and coordinated with law enforcement officers to support a baseless prosecution—conduct outside the scope of protected prosecutorial advocacy.

54. On October 24, 2024, Plaintiff filed a formal complaint with the North Dakota Disciplinary Board citing Olson's misconduct, procedural delays, misrepresentation of evidence, and collusion with Plaintiff's prior defense attorney, Jeff Nehring.

55. Olson had a known disciplinary history, including judicial sanctions in *City of Williston v. Travis Heinze*, Case Nos. 53-2020-CR-01356 and -01354, which supported Plaintiff's complaint.

56. Olson's influence as President of the North Dakota Bar Association and her relationships with local defense counsel compromised the fairness of Plaintiff's prosecution and denied him access to an impartial process.

57. The plaintiff also filed a judicial complaint with the North Dakota Judicial Conduct Commission, expressing concerns about Olson's unchecked authority and systemic retaliation.

58. Olson's decision to prosecute Plaintiff after the court ruled his arrest unlawful served no public safety purpose and was clearly retaliatory, intended to chill Plaintiff's exercise of his constitutional rights.

**Immunity Defenses Do Not Apply**

59. Defendants Hronek, Jonas, Goebel, L. Olson, Wilson, and Peterson are not entitled to qualified immunity because they violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments. A reasonable official would have known their conduct was unlawful.

60. The trial court's finding of unconstitutionality eliminates any arguable legal basis for qualified immunity.

61. Defendant T. Olson is not entitled to prosecutorial immunity. Her actions—continuing prosecution without probable cause, suppressing evidence, and retaliating against Plaintiff—were administrative and investigative in nature, not protected by absolute immunity.

62. T. Olson's conduct was retaliatory and malicious, placing it outside the scope of *Imbler v. Pachtman*, 424 U.S. 409 (1976), and related precedents.

**Privacy Violations and Municipal Liability**

63. Under **N.D.C.C. § 44-04-18** and department policy, the Williston Police Department had a duty to redact or withhold body camera footage containing private, medical, or embarrassing content—particularly when the subject had not been convicted.

64. Despite this duty, the Department released unredacted footage of Plaintiff's arrest, including accidental nudity and distress, to a non-licensed, non-journalistic third party, Thomas Simon.

65. The release was either negligently executed or intentionally retaliatory. It violated Plaintiff's constitutional right to privacy under the Fourteenth Amendment and North Dakota law.

66. The public dissemination of the unredacted video caused Plaintiff reputational harm, public shaming, emotional trauma, and professional injury.

**Failure to Investigate Plaintiff's Criminal Complaint Against Simon**

67. On or about May 9, 2024, Plaintiff filed a formal criminal complaint with the Williston Police Department, **Case No. PDIR2407619**, alleging that Thomas Simon violated state laws including criminal defamation, dissemination of obscene materials, and invasion of privacy.

68. The complaint included detailed factual allegations, legal citations, supporting exhibits, and names of witnesses to assist in investigation.

69. Despite the clear and substantial nature of the allegations, neither the Williston Police Department nor the Williams County Sheriff's Office conducted any investigation. No contact was made with Plaintiff, and no report was forwarded for prosecutorial review.

70. The refusal to investigate demonstrated a **deliberate indifference** to Plaintiff's constitutional rights and underscored a pattern of retaliatory treatment and selective enforcement.

71. This failure is particularly egregious given that the same law enforcement agencies had provided Simon with unredacted footage—enabling the very conduct Plaintiff later reported.

72. The refusal to investigate Plaintiff's complaint against Simon encouraged continued harassment and further contributed to Plaintiff's injuries, distress, and constitutional violations.

## V.     CLAIMS FOR RELIEF

*Pursuant to 42 U.S.C. § 1983 and the U.S. Constitution*

**Count I – Unlawful Seizure and Arrest Without Probable Cause**

*(Fourth and Fourteenth Amendments – Against Defendants Hronek, Jonas, Goebel, and Luke Olson), (Terry v. Ohio, 392 U.S. 1 (1968)), (Beck v. Ohio, 379 U.S. 89 (1964)), (Devenpeck v. Alford, 543 U.S. 146 (2004))*

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74. On March 31, 2024, Defendants, acting under color of state law, unlawfully seized, detained, and arrested Plaintiff without reasonable suspicion or probable cause, in violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments.

75. The 911 call was anonymous, uncorroborated, and failed to provide reliable or articulable facts justifying an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968).

76. Plaintiff was alert, cooperative, and non-threatening. Defendants escalated the encounter without legal justification and fabricated a basis for detention and arrest.

77. Defendants' conduct caused Plaintiff to suffer unlawful loss of liberty, reputational damage, and emotional distress.

**Count II – Excessive Force**

*(Fourth Amendment – Against Defendants Hronek and Jonas) (Terry v. Ohio, 392 U.S. 1 (1968)), (Beck v. Ohio, 379 U.S. 89 (1964)), (Devenpeck v. Alford, 543 U.S. 146 (2004))*

78. Plaintiff realleges the foregoing paragraphs.

79. Despite Plaintiff's compliant and nonviolent conduct, Defendants Hronek and Jonas used force that was excessive, unreasonable, and disproportionate to the circumstances.

80. The force applied during Plaintiff's arrest caused significant injury to Plaintiff's left shoulder, resulting in ongoing pain and reduced mobility.

81. The use of force violated Plaintiff's clearly established rights under the Fourth Amendment.

**Count III – Failure to Intervene**

*(Fourth and Fourteenth Amendments – Against Defendant Luke Olson), (Terry v. Ohio, 392 U.S. 1 (1968)), (Beck v. Ohio, 379 U.S. 89 (1964)), (Devenpeck v. Alford, 543 U.S. 146 (2004))*

82. Sgt. Luke Olson was present during Plaintiff's arrest and was informed of the unlawful seizure and aided in the fabrication of charges.

83. Olson had both the opportunity and duty to intervene to prevent these constitutional violations but failed to do so.

84. Olson's inaction constituted deliberate indifference to Plaintiff's rights under the Fourth and Fourteenth Amendments.

**Count IV – Malicious Prosecution**

*(Fourth and Fourteenth Amendments – Against Defendant Taylor Olson in Her Individual Capacity),(Terry v. Ohio, 392 U.S. 1 (1968)), (Beck v. Ohio, 379 U.S. 89 (1964)),*
*(Devenpeck v. Alford, 543 U.S. 146 (2004))*

85. Defendant Taylor Olson, acting under color of law and in her individual capacity as City Prosecutor, initiated and continued criminal proceedings against Plaintiff despite having knowledge that Plaintiff's arrest was unsupported by probable cause.

86. Defendant Olson willfully disregarded exculpatory evidence, misrepresented controlling legal standards in court filings, and pursued the prosecution with a retaliatory motive— particularly after the trial court issued a ruling declaring the initial stop and seizure unconstitutional.

87. The criminal case against Plaintiff ultimately terminated in his favor through a jury verdict of "Not Guilty" on February 28, 2025, followed by a formal Judgment of Acquittal entered on March 3, 2025.

88. Defendant Olson's conduct, including continuing the prosecution in bad faith and in the absence of probable cause, violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and is not protected by prosecutorial immunity.

89. The continuation of prosecution after a judicial finding of unconstitutional seizure was not supported by new evidence, objective legal justification, or a legitimate law enforcement purpose. Rather, it constituted an abuse of prosecutorial discretion intended to punish Plaintiff for asserting his constitutional rights.

**Count V – Retaliation for Protected Conduct**

*(First and Fourteenth Amendments – Against Defendants Hronek, Jonas, Luke Olson, Wilson, Peterson, Taylor Olson, and Simon), (Nieves v. Bartlett, 587 U.S. ___ (2019))*

*(Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977))*

90. Plaintiff engaged in constitutionally protected conduct, including filing complaints, requesting a supervisor, and defending his rights in public and judicial forums.

91. In response, Defendants engaged in retaliatory actions, including fabrication and continuation of charges, excessive force, malicious prosecution, and public dissemination of private and defamatory content.

92. These retaliatory acts were intended to chill Plaintiff's exercise of his First Amendment rights and caused Plaintiff significant emotional and reputational harm.

**Count VI – Violation of Right to Privacy**

*(Fourteenth Amendment – Against Defendants City of Williston, Peterson, Wilson, and Taylor Olson), (Nieves v. Bartlett, 587 U.S. ___ (2019)), (Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977))*

93. Defendants, acting under color of law, disclosed unredacted body-worn camera footage containing sensitive content including accidental nudity and emotional distress.

94. The release served no public safety purpose and was disseminated to a third party with known intent to defame Plaintiff.

95. This unjustified disclosure violated Plaintiff's right to privacy and substantive due process under the Fourteenth Amendment.

**Count VII – Deprivation of Liberty Interest Without Due Process ("Stigma-Plus")**

*(Fourteenth Amendment – Against Defendant Simon),  (Nieves v. Bartlett, 587 U.S. ___ (2019)), (Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977))*

96. Defendant Simon disseminated and fabricated false statements about Plaintiff, including false claims of felony status and domestic violence history.

97. These stigmatizing statements, when combined with disruption of Plaintiff's employment and client relationships, constituted a deprivation of liberty without due process.

98. Plaintiff was never provided with an opportunity to refute the claims, and suffered reputational, professional, and emotional harm, including loss of employment.

99. These actions constitute a "stigma-plus" violation of Plaintiff's liberty interests under Paul v. Davis, 424 U.S. 693 (1976), as the false stigmatizing statements were coupled with tangible harm to employment and reputation.

**Count VIII – Conspiracy to Violate Constitutional Rights**

*(42 U.S.C. §§ 1983 and 1985(3) – Against Defendants City of Williston, Hronek, Jonas, Luke Olson, Wilson, Peterson, Taylor Olson, and Simon),  (Nieves v. Bartlett, 587 U.S. \_\_\_ (2019)), (Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977))*

99. Defendants conspired to deprive Plaintiff of constitutional rights through a coordinated pattern of misconduct, including false arrest, malicious prosecution, retaliatory reporting, and reputational harm.

100.    Acts in furtherance of the conspiracy included: the unlawful stop and seizure, release of unredacted footage, publication of defamatory claims, fabrication of charges, and suppression of exculpatory evidence.

101.    As a result, Plaintiff suffered deprivation of liberty, loss of employment opportunities, and violation of due process.

102.    A civil conspiracy under §1983 requires (1) an agreement between two or more persons to deprive another of constitutional rights, and (2) an overt act in furtherance of the conspiracy that causes injury.

103.    On information and belief, Defendants agreed—explicitly or implicitly—to retaliate against Plaintiff by fabricating charges and disseminating harmful information in order to chill his exercise of constitutional rights.

**Count IX – Municipal Liability (Monell Claim)**

*(42 U.S.C. § 1983 – Against Defendants City of Williston and Williams County), (Terry v. Ohio, 392 U.S. 1 (1968)), (Beck v. Ohio, 379 U.S. 89 (1964)), (Devenpeck v. Alford, 543 U.S. 146 (2004))*

102. The unconstitutional conduct described above was carried out pursuant to policies, customs, or practices of the City of Williston and Williams County.

103. These included failures to properly train or supervise officers and dispatchers, redact private bodycam footage, investigate misconduct, and discipline retaliatory behavior.

104. City of Williston Commissioners, Chief Peterson, and Lt. Wilson, as final policymakers, ratified or failed to correct known misconduct, demonstrating deliberate indifference to Plaintiff's constitutional rights.

105. These policies and failures reflect a pattern of deliberate indifference to the constitutional rights of individuals such as Plaintiff. Such indifference was the moving force behind the violations of Plaintiff's rights, as defined in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny.

106. These failures were not isolated incidents but reflect a systemic breakdown in oversight, training, and disciplinary procedures, rising to the level of deliberate indifference

**Count X – Abuse of Process**

*(Against Defendant Taylor Olson in Her Individual Capacity), (Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994)), (Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209 (2d Cir. 2002))*

106.    Defendant Olson misused the criminal legal process against Plaintiff for an improper purpose unrelated to the pursuit of justice.

107.    Specifically, Defendant continued the prosecution of Plaintiff despite a judicial ruling of unconstitutional arrest and no lawful basis for the charge.

108.    This was done with retaliatory motive and with intent to cause harm, in violation of Plaintiff's Fourth and Fourteenth Amendment rights.

109.    As a result, Plaintiff suffered reputational harm, emotional distress, and financial injury.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

73. Enter judgment in favor of Plaintiff and against all Defendants.

74. Declare that Defendants violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

75. Award compensatory damages in an amount not less than **$25,000,000**, subject to proof at trial.

76.  Award punitive damages in an amount not less than **$75,000,000**, subject to proof at trial, for the willful, malicious, and unconstitutional conduct of the individual Defendants. Plaintiff respectfully requests that any punitive damages awarded by the jury be deposited into a nonprofit foundation or public interest trust, to be established for the express purpose of supporting constitutional rights education, civilian oversight of law enforcement, and legal aid for victims of civil rights violations. Plaintiff further requests that he be granted authority to oversee the selection of the foundation's executor, design and implement its programs, and serve as Chair of the foundation's governance structure, to ensure the funds are administered in accordance with the mission and the constitutional principles vindicated through this litigation.

77. Award costs and reasonable attorney's fees under 42 U.S.C. § 1988.

78. Grant injunctive relief as necessary to prevent future violations, including an order requiring the City of Williston to implement proper body camera redaction policies, training, and disciplinary oversight for retaliatory disclosures.

79. Issue a formal referral for disciplinary investigation and sanctions to the **North Dakota Bar Association** and **North Dakota Judicial Conduct Commission** regarding the professional misconduct of Defendant Taylor Olson and others.

80. Grant such other and further relief as the Court deems just and proper.

81. The plaintiff demands a trial by jury on all issues so triable.

## VII.    TABLE OF AUTHORITIES

82. The following authorities are cited throughout this Complaint in support of Plaintiff's constitutional and statutory claims under 42 U.S.C. § 1983. This Table is submitted for the Court's convenience and to facilitate judicial review of the legal grounds on which Plaintiff's claims are based. Each authority corresponds to one or more specific factual allegations and legal claims asserted herein.

| Authority | Citation | Summary | Paragraph(s) |
|---|---|---|---|
| Beck v. Ohio | 379 U.S. 89 (1964) | Probable cause is required for a lawful arrest; arrests without it are unconstitutional. | ¶¶ 285, 288, 291, 339, 356 |
| Cook v. Sheldon | 41 F.3d 73 (2d Cir. 1994) | Recognizes § 1983 abuse of process claims where legal procedures are misused for retaliatory purposes. | ¶ 360 |
| Devenpeck v. Alford | 543 U.S. 146 (2004) | Establishes that probable cause justifies arrest even if the crime suspected differs from the one charged. | ¶¶ 285, 288, 291, 339, 356 |
| Imbler v. Pachtman | 424 U.S. 409 (1976) | Prosecutors have absolute immunity only for advocacy-related functions. | ¶ 324 |
| Lombard v. Booz-Allen & Hamilton, Inc. | 280 F.3d 209 (2d Cir. 2002) | Abuse of process claim requires showing of improper use of legal process for a collateral objective. | ¶ 360 |
| Monell v. Dept. of Social Services | 436 U.S. 658 (1978) | Municipalities are liable under § 1983 when policies or practices cause constitutional violations. | ¶¶ 27, 339 |
| Mt. Healthy City Sch. Dist. v. Doyle | 429 U.S. 274 (1977) | Government actions that retaliate for protected speech violate the First Amendment. | ¶¶ 296, 341, 347, 353 |
| Nieves v. Bartlett | 587 U.S. ___ (2019) | Retaliatory arrest claims are viable where evidence shows official motive, even if probable cause exists. | ¶¶ 296, 341, 347, 353 |
| Paul v. Davis | 424 U.S. 693 (1976) | "Stigma-plus" doctrine: reputational damage plus tangible harm can violate due process. | ¶ 353 |

| Authority | Citation | Summary | Paragraph(s) |
|---|---|---|---|
| Terry v. Ohio | 392 U.S. 1 (1968) | Requires reasonable suspicion for investigatory stops and limited searches. | ¶¶ 285, 288, 291, 339, 356 |

**Statutes and Rules**

| Authority | Citation | Summary | Paragraph(s) |
|---|---|---|---|
| 28 U.S.C. § 1331 | Federal Question Jurisdiction | Grants jurisdiction over claims arising under the Constitution or federal law. | ¶ 44 |
| 28 U.S.C. § 1343(a)(3)-(4) | Civil Rights Jurisdiction | Federal courts may hear civil rights and equal protection claims. | ¶ 45 |
| 28 U.S.C. § 1367 | Supplemental Jurisdiction | Allows federal courts to hear state claims related to federal ones. | ¶ 47 |
| 28 U.S.C. § 1391 | Venue | Specifies where federal civil suits may be brought. | ¶ 46 |
| 28 U.S.C. §§ 2201-2202 | Declaratory Judgment Act | Authorizes courts to declare rights and issue binding legal rulings. | ¶ 48 |
| 42 U.S.C. § 1983 | Civil Action for Deprivation of Rights | Enables lawsuits for violations of constitutional rights under color of law. | ¶¶ 1, 42, 284, 339, 347, 356, 362 |
| 42 U.S.C. § 1985(3) | Civil Conspiracy to Violate Rights | Provides a cause of action for conspiracies to deprive constitutional rights. | ¶ 347 |
| 42 U.S.C. § 1988 | Attorney's Fees | Authorizes prevailing parties in civil rights cases to recover attorney's fees. | ¶ 368 |
| N.D.C.C. § 44-04-18 | ND Open Records Law | Mandates redaction of sensitive or private content from government records before public release. | ¶ 327 |
| N.D. R. Civ. P. 11 | Good Faith Pleading Rule | Requires filings to be truthful and grounded in fact and law; governs sanctions. | ¶ 372 |

## VII. CERTIFICATION AND CLOSING

83. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, I certify to the best of my knowledge, information, and belief that this Complaint:

    a)  It is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

    b)  Is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

    c)  Has factual contentions that have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    d)  Complies with the requirements of Rule 11(b).

I understand that if this certification is found to be false, the Court may impose sanctions on me, including dismissal of this action, monetary penalties, or other appropriate relief.

Dated: April 10, 2025

s/: _____

Christopher M. Bauer, Pro Se Legal
U.S.A.F. Military Veteran
6244 Eastwood Court
Anchorage, AK 99504-4433
Tel: 509-986-3761
Email: apricitygroup@gmail.com